UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAMES H.,                                          )
                                                   )
                              Plaintiff,           )
                                                   )
                    v.                             )        No. 1:19-cv-02784-TAB-SEB
                                                   )
ANDREW M. SAUL, Commissioner of the Social         )
Security Administration,                           )
                                                   )
                              Defendant.           )


**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT**

**I.      Introduction**

Plaintiff seeks judicial review of the Social Security Administration's decision denying

his application for disability insurance benefits.  Plaintiff's claim has a protracted procedural

history that has snaked its way through the agency and courts since being filed in 2003.  The case

is rooted in injuries Plaintiff sustained in Vietnam on May 27, 1968, while serving in the infantry

of the Marine Corps, for which he was awarded a Purple Heart.  The Veterans Administration

awarded him disability for his injuries.  The SSA awarded him disability for those same injuries

but terminated those benefits in August 1971.  Plaintiff did not appeal the cessation

determination in a timely manner.  *Res judicata* now precludes him from challenging that

determination.  So, as a matter of law, this appeal concerns a narrow window of time between

September 1971 and March 31, 1973, his date last insured.  More than 47 years since that

window has closed, Plaintiff's case continues.  It will not end here.  For the reasons detailed

below, the Court remands the ALJ's decision.

## II.    Background

On July 29, 2003, Plaintiff filed the instant application for disability insurance benefits, alleging a disability onset date of September 1, 1971.  The SSA denied his application initially and upon reconsideration.  The ALJ held a hearing in 2005 and denied his claim.  The Appeals Council denied review and Plaintiff sought judicial review.  The district court affirmed, and Plaintiff appealed to the Seventh Circuit.  While his appeal was pending, Plaintiff submitted evidence from the VA that was relevant to the period under review.  The Commissioner of the SSA motioned to remand the case to the agency.  On November 30, 2009, the Seventh Circuit granted the SSA's motion.  In 2011, an ALJ conducted another hearing.  That ALJ also denied Plaintiff's claim, and Plaintiff appealed to the district court.  On April 22, 2016, the Court remanded the claim to the SSA for further consideration.  The ALJ held a third hearing in 2017.  On June 28, 2017, the ALJ issued a decision—under review here—that again denied Plaintiff's claim.  The ALJ found that Plaintiff was last insured for benefits on March 31, 1973.  The ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: history of below the knee amputation of the left leg, loss of abdominal musculature, history of shrapnel to the right shoulder, and neuropathy of the saphenous nerve."  [Filing No. 14-1, at ECF p. 21 (citation omitted).]  The ALJ found Plaintiff's RFC to be limited as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant would need to alternate between sitting/standing 5 minutes each hour but would remain on task at the work station.  The claimant could never climb ladders, ropes, scaffolds, crouch or crawl but could occasionally climb ramps, stairs, and stoop, kneel and balance.  The claimant could not reach overhead on the right, and should avoid all hazards to include wet and uneven surfaces, moving machinery, and unprotected heights, and should avoid even moderate exposure to vibration and avoid concentrated exposure to extreme cold.  The claimant could not work in a position that required pushing or pulling with the lower extremities, and could occasionally push and/or pull with the upper extremities.

2

[Filing No. 14-1, at ECF p. 22.]  Continuing with the five-step determination, the ALJ ultimately found that there was other work that Plaintiff could have performed through his date last insured with jobs that existed in significant numbers in the national economy in representative occupations such as a packager, production inspector, and clerical addresser.  The Appeals Council issued a brief explanation that overruled Plaintiff's legal objections and declared the ALJ's 2017 decision to be the final determination of the Commissioner.  This suit followed.

III.    **Discussion**

Plaintiff raises two assertions of error, arguing that the ALJ: (1) failed to find that Plaintiff met or equaled Listings 1.02, 1.05, 1.06, and 1.08, and (2) did not support her RFC finding by confronting all the relevant, conflicting evidence and/or building a logical bridge from the evidence to her conclusions.

**A.  Listings**

To meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, the precise criteria specified in the listing.  *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at Step Three.  In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if he has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance."  *See* 20 C.F.R. § 404.1526(a)-(b).

Plaintiff contends that he met or equaled Listings 1.02, 1.05, and/or 1.06, referring respectively to the functional effects of major dysfunction of a weight-bearing joint, amputation, and non-union of a leg fracture.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02, 1.05, and 1.06.

Each of those alleged listings, in relevant part, require that the impairment results in an inability to ambulate effectively.  *Id.*  Plaintiff also alleges Listing 1.08.  Listing 1.08 requires a soft tissue injury "under continuing surgical management" that is ultimately unsuccessful in restoring "major function" in the involved body part within one year.  *Id.* at 1.08.

Based on the record, the difficulty with evaluating Plaintiff's listing arguments is the scant objective evidence during the relevant period.  Plaintiff must establish his disability on or before his date last insured, March 31, 1973.  *Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012).  To establish presumptive disability at Step Three based on a listing, the Seventh Circuit has explained:

> [A]n ALJ must follow 20 C.F.R. § 404.1529(d)(3), which describes how the agency decides whether the individual's impairment or combination of impairments are medically equal in severity to an impairment on the list of pre-determined disabling impairments.  The regulation explains that the agency will consider whether an individual's symptoms and objective medical evidence are equal in severity to those of a listed impairment.  It includes a caveat: "However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding [i.e., objective medical evidence] to raise the severity of your impairment(s) to that of a listed impairment." *Id.*

*Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).  While there is objective medical evidence to establish that Plaintiff had impairments that could have met or equaled the listings, there is not objective medical evidence during the narrow window to establish the required functional effects.  Plaintiff largely depends on his own testimony and the supportive statement of his brother to argue that he could not ambulate effectively and/or required ongoing surgical treatment to address his soft tissue injury of the right hip and buttocks.  There are not clinical findings during the window that describe his ability to ambulate, nor are there treatment records that verify the ongoing complications he had from the soft tissue injury.  Perhaps an acceptable medical source could find otherwise, but the record also does not include a medical opinion that

a listing was met or equaled.  Accordingly, the Court does not find error based on Plaintiff's

listing arguments.

### B. Sedentary RFC

In contrast, when it comes to assessing a claimant's RFC, the SSA's guidance explains:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence.  In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *4.

Plaintiff contends that the ALJ cherry-picked the record to emphasize that Plaintiff was

capable of performing activities of daily living—including having hobbies and maintaining an

active lifestyle—without recognizing that such activities cannot be used to demonstrate the

ability to sustain full-time work in the competitive economy.  Plaintiff further contends that the

ALJ did not properly evaluate Plaintiff's full testimony, his brother's supportive statement, and

the VA disability rating determinations of record.

The Seventh Circuit has repeatedly held that "[t]he ALJ must confront the evidence that

does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*,

743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.

2004) (collecting cases)).  The ALJ must determine a claimant's RFC by evaluating "all

limitations that arise from medically determinable impairments, even those that are not severe."

*Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*

The ALJ's decision provided a fairly thorough explanation of her conclusions concerning Plaintiff's below-the-knee amputation of his left leg, his use of a prosthetic, his ability to bear weight relative to the need to use ambulatory aids, and his capacity to sustain standing and walking.  However, the ALJ's decision does not adequately confront the evidence of record that conflicts with the ALJ's RFC finding that Plaintiff would have been capable of sustained sitting necessary to perform sedentary exertional work.

On October 13, 1969, based on Plaintiff's combined impairments, the VA determined that he had an 80% disability rating that was to be compensated at 100% because of individual unemployability.  [Filing No. 14-1, at ECF p. 238.]  The VA determination included a breakdown of Plaintiff's individual impairments, including a 40% rating for his left leg amputation.  [Filing No. 14-1, at ECF p. 237.]  However, his most disabling impairment was assigned a 50% rating for residuals of shell fragment wounds of the muscle group of the right sacroiliac region with retained foreign bodies, rated as "severe." *Id.*  The VA determination described those injuries in more detail:

> Over the right posterior sacro-iliac area is a markedly deep wound measuring three and one half by four and one half inches with loss of subcutaneous fat and some of the superior fibers of the gluteus maximus muscle and some of the underlying bone.  This is covered with skin graft and is healed except for a crater one and three quarter inches long at the inferior part of the wound with some exudative draining from the subcutaneous areas of this area.

[Filing No. 14-1, at ECF p. 239.]  On October 27, 1971, Plaintiff's VA disability rating was restored to 100% after it was noted it had been reduced because of Plaintiff's failure to return an employment questionnaire.  [Filing No. 14-1, at ECF p. 235.]  Incidentally, this was around the time that Plaintiff's SSA benefits were terminated.  On October 31, 1975, the VA reaffirmed

each of the disability ratings described above.  [*See* Filing No. 14-1, at ECF p. 233.]  The VA

determination explained that the "[r]ecent examination discloses no indication of improvement in

his service[-]connected disabilities which are now considered static.  It is further indicated that

he has not been able to resume employment since discharge from military service."  *Id.*

Addressing an attorney fees dispute in one of Plaintiff's prior appeals of this case, the

Seventh Circuit detailed the VA determinations that had been recently submitted—leading to the

SSA's motion to remand the claim.  *Hardesty v. Astrue*, 435 F. App'x 537, 539 (7th Cir. 2011).

Judge Posner explained that the "new records strongly support exactly what [Plaintiff] has

asserted: that he became totally disabled at some point between 1971 and 1973."  *Id.*

The ALJ addressed the VA disability rating determinations.  She explained that she did

not "give them much weight" based on the differing standards used by the VA and the SSA to

evaluate disability.  [Filing No. 14-1, at ECF p. 25.]  Regarding a VA unemployability

determination, the Seventh Circuit has explained:

> Such a finding when made is practically indistinguishable from the SSA's
> disability determination, which asks whether a medically determinable
> impairment prevents the claimant from engaging in past relevant work or any
> substantial gainful work that exists in the national economy.  42 U.S.C. §
> 423(d)(1)(A); 20 C.F.R. § 404.1505; *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir.
> 2015).  But there are differences in how the agencies evaluate claims: the VA's
> evaluation is pro-claimant rather than neutral: "When after careful consideration
> of all procurable and assembled data, a reasonable doubt arises regarding the
> degree of disability such doubt will be resolved in favor of the claimant."  38
> C.F.R. § 4.3; *Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998).  That is
> not [the] SSA's approach.

*Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017).  The VA ratings cannot conclusively

establish disability because of the differing standards.  Accordingly, the Court does not find legal

error based on the ALJ's failure to simply adopt the VA's disability determination.

However, the ALJ's decision does not demonstrate that she appreciated the relevance of the VA determinations in this case.  The VA determinations establish that Plaintiff had a severe, medically determinable impairment—a soft tissue injury with loss of bone and muscle in the right sacroiliac region—that the VA considered to be the Plaintiff's most disabling injury during the relevant period.  Such an impairment is certainly relevant to an evaluation of Plaintiff's ability to sustain prolonged sitting.

Plaintiff testified consistently at three different hearings that he continued to have relevant, subjective symptoms that limited his capacity to sustain sitting in a position conducive to the performance of work activity.  For instance, he testified in 2005 that he had a reduced "stamina" for prolonged sitting, "I get uncomfortable after a half hour to an hour of sitting, so I get up and move around a bit."  [Filing No. 14-1, at ECF p. 78.]  When asked again how long he could sit, Plaintiff responded, "A half [hour], see I'm uncomfortable now, that's why I turned to the side.  I've got some curvature of the spine too, with the injury sustained to my hip, and muscle and bone loss."  [Filing No. 14-1, at ECF p. 84-85.]  He explained that he was more comfortable at home in his recliner and could sit longer, for maybe two hours at a time.  [Filing No. 14-1, at ECF p. 85.]  He testified that he had five or six surgeries on his hip after he was honorably discharged from the military.  [Filing No. 14-1, at ECF p. 92.]

At the hearing in 2011, Plaintiff was asked to describe his condition during the relevant period between 1971 and 1973.  He testified that he was making a lot of trips to the VA hospital in Indianapolis, "I had a dead bone in my right hip and they fixed it two or three times and I had a draining, open wound, a large wound and they finally decided they was going to close that and it took two or three surgeries to do that and they took care of that."  [Filing No. 14-1, at ECF p. 114-15; see Filing No. 14-1, at ECF p. 118-21 (describing the procedure during the relevant period in more detail, as well as complications with infections resulting in "high fevers").]  He

testified that he was sitting in a "cocked" position during the hearing, could not sit for an hour at a time, and spent six hours in a recliner each day.  [Filing No. 14-1, at ECF p. 124.]  He testified further that he would not have been able to sustain an eight-hour workday, even if he had the ability to change positions at will.  [Filing No. 14-1, at ECF p. 126-27.]  When asked to discuss his functioning during the relevant period, Plaintiff gave the example, "When I would -- excuse me, when I'd come down to the Veterans Hospital and then I'll go back home and lay down and just going down there and sitting and waiting and doing what they wanted me to do, just for an examination, I'd come back home I'd just be exhausted."  [Filing No. 14-1, at ECF p. 127.]

Most recently in 2017, Plaintiff testified that he could not sit for long periods during the relevant window and continued to have problems doing so, such that he was "leaned over" during the hearing.  [Filing No. 14-3, at ECF p. 189.]  He testified further that he could sit for two hours at a time before needing to get up, but that five or six times a day he also would spend 60 to 90 minutes in a recliner with his feet up.  [Filing No. 14-3, at ECF p. 190.]

On August 3, 2009, Plaintiff's brother wrote a letter describing Plaintiff's functioning between 1970 and 1972 and corroborating Plaintiff's testimony.  [Filing No. 14-1, at ECF p. 227.]  The letter stated in relevant part that "he was constantly having problems with his right[-]side hip area.  I recall the doctors doing skin grafts and plastic surgery[,] but he continued to experience drainage and swelling in this area.  He was always very uncomfortable while sitting or walking.  He would walk, but was in pain."  *Id.*

The ALJ explained the basis, in part, of her RFC finding that "pursuant to the claimant's testimony, during the relevant period, he could sit for a couple of hours and would then get up and move around due to pain in the hip and back.  He could walk about a block before sitting to rest.  Moreover, he could lift and/or carry 15-20 pounds, all of which the undersigned has

9

accounted for above in the residual functional capacity by limiting the claimant to a modified range of sedentary work." [Filing No. 14-1, at ECF p. 26.]  However, the ALJ did not confront the aspects of Plaintiff's testimony that conflict with the notion he could sit for the predominant part of an eight-hour workday and remain productive so long as he could get up for five minutes each hour.  According to his testimony over the three hearings, as well as his brother's statement, Plaintiff was in pain while sitting, needed to maintain an unusual position to do so, and spent a significant amount of time in a recliner.

Pursuant to the standard of review, a reviewing court may not substitute its judgment for the ALJ's "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (internal quotations omitted).  Accordingly, the Court cannot grant Plaintiff's request to remand the claim with instructions to award benefits.  However, remand is proper for further consideration of Plaintiff's RFC, his capacity to sustain work while sitting, and his credibility.

## IV.   Conclusion

For the reasons explained above, the ALJ's decision is **REMANDED**, for further consideration of Plaintiff's credibility.  Final judgment will issue accordingly.

Date: 10/23/2020

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.